## CIRCUIT COURT OF HENRICO COUNTY

Lee Conner Realty Corp.

v.

Hatsey Lannon et al.

April 17, 1987

Case No. 83-C-209

By JUDGE JOSEPH F. SPINELLA

The Court has reviewed and considered the entire file, the evidence heard by the Commissioners, memorandum of counsel for all parties and arguments of counsel.

The bill to enforce a mechanic's lien was filed on March 4, 1982, by the plaintiff, Lee Conner Realty. It was alleged that the plaintiff performed certain services for the defendant as a general contractor under a written contract for the repair and renovation of a residential home owned by the defendant. Work was performed by the plaintiff and the defendant paid a substantial portion of the charges but refused to pay the balance of $35,710.57 to the plaintiff at the time its services were terminated. The plaintiff was not allowed to complete all of the work and within the statutory period of time the plaintiff filed a mechanic's lien against the property and thereafter within the six-month period the plaintiff filed this suit to enforce the lien.

The defendant answered the suit and stated that she was not obligated to the plaintiff in the amount sued for and requested release of the lien. She makes

certain affirmative defenses in which she states that the plaintiff did not furnish or supply all of the listed materials as alleged and that his work was defective. She prays that the mechanic's lien be invalidated and released as a lien upon the property. The plaintiff responded to the affirmative defenses by denying the allegations.

Thereafter, on May 20, 1982, the Court entered a Decree of Reference referring the case to A. L. Witcher, Jr., one of the Commissioners in Chancery for this Court. The Commissioner held a preliminary hearing on July 19, 1982, and began receiving evidence in the case on August 2, 1982. The evidence continued through August 3, 1982. This volume contains the testimony of Mr. Lee Conner, for the plaintiff, and Mr. Ennis, a witness for the defendant (332 page transcript). Further depositions of Mr. Conner were taken on August 10, 1982, along with the depositions of Mr. Hargis, another witness for the defendant (240 page transcript).

Mr. Lagow, attorney for the defendant, withdrew as counsel for the defendant on January 20, 1983, and Mr. Barry Hackney of the firm of Hirschler, Fleisher and Weinberg was substituted as counsel for the defendant. On June 2, 1983, almost six months later, the defendant's attorney, Linda Royster, on behalf of the firm on Hirschler, Fleisher, and Weinberg, was allowed to withdraw as counsel of record but the Court directed that the depositions, which were scheduled before the Commissioner for June 13, 1983, were to go forward.

On June 13, 1983, the defendant's new attorney, Neil S. Kessler, of Staples, Greenberg, Minardi and Kessler, appeared before the Commissioner and requested a continuance. After much debate a continuance was granted to July 13, 1983, for the further taking of evidence.

On July 13, 1983, Mr. James Moore, of the firm of Staples, Greenberg, Minardi and Kessler, appeared to represent the defendant, and the testimony of the defendant, Mrs. Lannon, was received by the Commissioner (204 page transcript). On July 14, 1983, the evidence of Quincy Lane (35 page transcript) and additional testimony of Mrs. Lannon as well as the evidence of her witness, Merle W. Tate, (181 page transcript) was heard by the Commissioner. On July 15, 1983, the Commissioner heard the evidence of Daniel Fisher, Patrick Karns, James Berkley, Jr.,

and William Childress (223 page transcript) all witnesses for the plaintiff. The hearing was continued to July 19, 1983, when the Commissioner heard the evidence of Larry Yancey, Milton Maddox, Curtis Rigglesworth, Thomas Crews, Jr., all witnesses for the plaintiff and additional testimony of Mr. Conner (195 page transcript). The next day, July 20, 1983, the evidence of the defendant, Mrs. Lannon, was heard (110 page transcript). The evidence was thus concluded with the evidence extending over 1485 pages of transcript.

Thereafter, the defendant attempted to file a cross-bill but was not given leave of court by Judge Baker in a hearing held on May 11, 1984. The defendant was allowed to lodge the cross-bill with the record and Judge Baker determined that he would receive the report of the Commissioner before ruling on the granting of leave to allow the cross-bill to be filed. Judge Baker never made this ruling and accordingly the cross-bill has never been filed by leave of court and the Court, at this time, rules that it will not grant leave to the defendant to file the cross-bill.

On July 24, 1984, the Commissioner resigned from the case because of health reasons. On August 21, 1984, Mr. James Moore advised the Court that Mrs. Lannon, the defendant, had retained Mr. Rosman as her attorney and had released him. The Order substituting Mr. Rosman as counsel was entered on October 2, 1984. On October 4, 1984, Judge Baker referred the matter to Mr. Harry Shaia, Jr., one of the Commissioners in Chancery for this Court, and requested him to continue with the case under the previous decree of reference. On October 12, 1984, all other defendants, other than Mrs. Lannon, were dismissed from the suit.

On October 1, 1985, Mr. Rosman was allowed to withdraw as counsel and Mr. Jay Pickus became counsel of record for the defendant. At the hearing allowing Mr. Rosman to withdraw, the Court advised the defendant that Mr. Pickus would not be relieved as counsel of record and that if she became dissatisfied with his services she could retain counsel in addition to Mr. Pickus and the disposition of this case would proceed without further delay due to any change of counsel.

The new Commissioner held a conference on June 20, 1985, with Mr. Farmer, attorney for the plaintiff, and the defendant, in person. Apparently, prior to that time, the defendant was being represented by Mr. Bandas, but the record does not disclose that Mr. Bandas ever became counsel of record for Mrs. Lannon. Other consultations took place and counsel submitted briefs to the Commissioner. On May 22, 1986, the Court entered an Order denying the substitution of new counsel for the defendant but again advised her that she could associate co-counsel should she be so advised. The Court further set a time for the Commissioner to file his report and the Commissioner thereafter filed his report on September 12, 1986. The plaintiff filed exceptions to the Commissioner's Report on September 22, 1986, and the defendant failed to file any exceptions to the Commissioner's Report within the 10-day period. Mr. Pickus was still counsel of record at that time. Thereafter, on September 26, 1986, a motion was made for substitution of counsel which was not considered by the Court and on October 2, 1986, Mr. John S. Barr became associated counsel and filed a motion on behalf of the defendant requesting the Court to extend the filing of exceptions to the Commissioner's Report. Effective October 1, 1986, Mr. Pickus was suspended from the practice of law for one year. A hearing was held on October 3, 1986, at which time the Court denied the extension of time for the filing of exceptions on behalf of the defendant and thereafter the attorney for the defendant lodged the exceptions to the Commissioner's Report with the file. A hearing was then set for the Court to consider the exceptions to the Commissioner's Report filed by the plaintiff and the Court heard arguments of counsel for both parties on December 5, 1986, and took the matter under advisement. The Court will now rule on the exceptions filed.

The first exception filed by the plaintiff to the Commissioner's Report is the Commissioner's finding in response to inquiry # 4 in granting a credit to the defendant for $4,229.49 for electrical work. The Court has reviewed the evidence and finds that the plaintiff established his claim for the entire amount of $11,815.79 and that the defendant failed to prove that the plaintiff's work was defective. The Court finds that the 75% factor reached by the Commissioner is not substantiated by the

evidence and therefore overrules the Commissioner's findings in this respect and awards the full amount of $11,815.79 to the plaintiff thereby denying the credit of $4,229.49 allowed by the Commissioner.

The second exception to the Commissioner's ruling is the establishment of the legal rate of interest at 6%. The plaintiff argues for a rate of interest of 10% from January 25, 1982, to July 1, 1983, and 12% thereafter. The Court can not find any basis for awarding a rate of interest higher than the legal rate of 6% in the absence of any express agreement in the contract. The Court now affirms the finding of the Commissioner and overrules the exception.

The third exception to the Commissioner's Report is with regard to the failure of the Commissioner to recommend an award of attorney fees to be paid by the defendant to the plaintiff's attorney. The Court rules that the Commissioner was not in error and he properly left the question of attorney fees requested by the plaintiff to be determined by the Court.

The Court can find no authority in the law to award attorney fees to the plaintiff in a suit to enforce a mechanic's lien in the absence of a contract between the parties providing for the attorney's fees in the event of default in the payment of the obligation.

In Michie's Jurisprudence, *Costs*, Section 3, at Page 4, in Volume 5A, it is stated:

> [c]reditors who collect their debts by law are not entitled to impose their counsel fees on their debtors. But in appropriate cases counsel fees may be awarded as an element of damages.

In the case of *Gibbs* v. *Randolph*, 28 Bankruptcy 811 (Bankr. E.D. Va. 1983), the Federal Court found that:

> [w]here no statute specifically authorized the award of attorney's fees, Courts have inherent power to allow attorney's fees unless forbidden to do so by law. Generally, the American rule concerning attorney's fees provides that absent a statute providing for the award of attorney's

fees, a prevailing party is entitled to obtain reasonable attorney's fees from the losing party only when the losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons.

The defendant in this case, in the view of the Court, acted in a wanton and oppressive manner in requiring the plaintiff to attend a number of hearings for the sole purpose of replacing counsel at different stages of the case. The record does not disclose any valid reason for replacing counsel and particularly counsel who represented the [defendant] throughout the depositions before the Commissioner. The only exception is the situation of Mr. Pickus who was suspended from the practice of law for a period of one year, which did not become effective until almost a month after the filing of the Commissioner's report, and is therefore no longer counsel for the defendant.

The Court, therefore, is of the opinion that the plaintiff is entitled to some attorney's fees and the Court allows the sum of $1,500.00 as attorney's fees.

Exceptions 4, 5 and 6 deal with costs, Commissioner's fees, and court reporter fees. The plaintiff is the successful litigant in the matter and is entitled to be paid any costs for filing fees or service fees. The amount stated in exception 6 is $92.00. The Court will require the defendant to also pay all court reporter fees for all in-court hearings as part of the costs. The plaintiff alleges this sum to be $590.10 in exception No. 4.

The Court also finds that the Commissioner's recommendation as to fees of the two Commissioners and the court reporter fees for taking the evidence before the Commissioners is proper and is justified by the evidence and record in this case, and therefore the plaintiff shall pay 25% and the defendant pay 75% of all Commissioners' fees and court reporter fees.

The Commissioner revised the plaintiff's fee on the verbal contract based on his report, and therefore the Court will further revise the plaintiff's fee based on the adjustments for the light fixtures in the amount of $1,139.75 and the charges for items not covered by the lien in the amount of $383.45, the total of which

is $1,523.20. Ten percent of this amount is $152.32, and this is allowed as a credit to the defendant. A summary of the amount due the plaintiff under the Court's decision is as follows:

| | | |
|---|---|---|
| Amount claimed by plaintiff | | $35,710.57 |
| Deduction of direct payment to Paint Contractor | $2,800.00 | |
| Deduction for Light Fixture (not contested) | 1,139.75 | |
| Deduction for amount charged for items not covered by lien | 383.45 | |
| Plaintiff's fee reduction | 152.32 | |
| TOTAL DEDUCTIONS | $4,475.65 | $ 4,475.65 |
| BALANCE | | $31,235.05 |

The Court, therefore, will give judgment against the defendant for the sum of $31,235.05 plus the costs and fees awarded above and all of which is a valid enforceable lien against the property of the defendant hereunder. In the event the defendant fails to pay this judgment, the property will be sold to satisfy the lien.

The Court further awards judgment to the plaintiff against the defendant in the amount of $383.45 for the items sold to defendant but which are not covered by the mechanics lien.

Both judgments shall carry interest at the rate of 6% from January 25, 1982, until April 24, 1987, at which time the judgment order will be entered and thereafter the judgment rate of 12% per annum shall begin.